UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RHEUMATOLOGY DIAGNOSTICS LABORATORY, INC, et al., <br><br>　　　　　Plaintiffs, <br><br>　　　v. <br><br>AETNA, INC., et al., <br><br>　　　　　Defendants. | Case No. 12-cv-05847-WHO <br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** <br><br>Re: Dkt. Nos. 271, 272, 292, 295, 302 |

**INTRODUCTION**

Plaintiffs in this case, two California-based providers of clinical laboratory services, accuse defendants Quest Diagnostics Incorporated and Quest Diagnostics Clinical Laboratories Incorporated (collectively, "Quest") of selling lab tests at below-cost prices in violation of California's Unfair Practices Act and Unfair Competition Law. Plaintiffs filed this motion for summary judgment on April 1, 2015. Shortly thereafter, I issued an order on Quest's previously-filed motion for summary judgment and granted summary judgment for Quest on the bulk of plaintiffs' claims. Only two of plaintiffs' theories of liability remain in the case following that order: (1) plaintiff Hunter Laboratories, Inc.'s ("Hunter's") claim that it was harmed by Quest's below-cost sales of individual lab tests as part of its contract with Aetna, Inc. ("Aetna"); and (2) plaintiff Surgical Pathology Associates' ("SPA's") claim that it was harmed by Quest's below-cost capitated contract with Partnership Health Plan.[1] Plaintiffs now seek summary judgment on a

---

[1] Plaintiffs contend that SPA also has claims based on Quest's contracts with Aetna and California Physicians' Services, Inc. dba Blue Shield of California ("Blue Shield") that survived the summary judgment ruling. Reply at 1 n.2. Plaintiffs attribute approximately $47,000 of SPA's damages to these claims. Regan Reply Rpt. at 24 (Lambrinos Reply Decl. Ex. 1, Dkt. No. 295-7). Plaintiffs raised this issue for the first time in their reply brief, more than six weeks after I decided Quest's motion for summary judgment. It is not necessary to address this issue to resolve this motion, and I do not consider it here. If plaintiffs want me to consider whether SPA may bring claims in this case based on Quest's contracts with Aetna and Blue Shield, plaintiffs shall file a motion for leave to file a motion for reconsideration. *See* Civil L.R. 7-9.

variety of issues regarding these remaining claims and Quest's remaining affirmative defenses. For the reasons discussed below, the motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The facts of this case are set out in detail in the April 15, 2015 order on Quest's motion for summary judgment, Dkt. No. 282 ("Prior Order"), and I only briefly summarize them here.

The parties are all providers of clinical laboratory services. Quest is a national laboratory with operations in California. Hunter and SPA are smaller, California-based laboratories. Plaintiffs accuse Quest of violating California's Unfair Practices Act ("UPA") and Unfair Competition Law ("UCL") by selling its lab tests at below-cost prices "for the purpose of injuring plaintiffs and destroying competition." Third Amended Complaint ¶¶ 151-52 (Dkt. No. 268). Plaintiffs claim that as a result of Quest's below-cost sales, they have been "deprived of . . . a large number of their actual and potential customers." *Id.* ¶ 153.

Initially, there were four clinical laboratory plaintiffs in this case: Hunter, SPA, Rheumatology Diagnostics Laboratory, Inc. ("RDL"), and Pacific Breast Pathology Medical Corp. ("PBP"). They charged Quest with three methods of illegal below-cost pricing: (1) entering below-cost capitated contracts with Independent Physician Associations ("IPAs") for the purpose of securing lucrative fee-for-service business from physicians belonging to the IPAs; (2) undercutting plaintiffs in the general fee-for-service market by selling lab tests at below-cost prices; and (3) using below-cost sales to secure "network narrowing" contracts with health insurance providers, such as Aetna, Blue Shield, and Partnership Health Plan.[2]

Based on these theories, Hunter, SPA, RDL, and PBP brought a number of claims against Quest for violations of the UPA's below-cost and loss-leader sales provisions (California Business & Professions Code §§ 17043 and 17044) and of the UCL's unfair and unlawful prongs.[3] Section

---

[2] Quest describes Partnership Health Plan as a "non-profit organization that contracts with the state to administer Medi-Cal benefits through local providers." Opp. at 6.

[3] Hunter, SPA, RDL, and PBP's initial complaint also alleged claims for violations of the Sherman and Cartwright Acts, interference with prospective economic advantage, and violations of the UCL's fraudulent prong. Dkt. No. 1. ¶¶ 74-140. After several iterations of the complaint and several rulings on motions to dismiss, all but the claims under the UPA's below-cost and loss-leader sales provisions and the UCL's unfair and unlawful prongs were dismissed with prejudice.

17043 makes it "unlawful for any person engaged in business within [California] to sell any article or product at less than the cost thereof to such vendor, or to give away any article or product, for the purpose of injuring competitors or destroying competition." Cal. Bus. & Prof. Code § 17043. Section 17044 makes it "unlawful for any person engaged in business within [California] to sell or use any article or product as a 'loss leader' as defined in section 17030." Cal. Bus. & Prof. Code § 17044. Section 17030 defines "loss leader" to mean "any article or product sold at less than cost . . . [w]here the purpose is to induce, promote, or encourage the purchase of other merchandise; or . . . [w]here the effect is to divert trade from or otherwise injure competitors." Cal. Bus. & Prof. Code § 17030.

Quest moved for summary judgment on January 16, 2015. Dkt. No. 216. On April 15, 2015, following oral argument, I issued an order granting summary judgment for Quest on all but two of the claims against it: (1) Hunter's claims arising from Quest's alleged below-cost sales of individual tests as part of its contract with Aetna; and (2) SPA's claims arising from Quest's alleged below-cost capitated contract with Partnership Health Plan. Prior Order at 1.

Plaintiffs filed this motion on April 1, 2015. Dkt. No. 272. I heard argument from the parties on June 10, 2015. Dkt. No. 303.

## LEGAL STANDARD

A party is entitled to summary judgment where it "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if it could reasonably be resolved in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material where it could affect the outcome of the case. *Id.*

The moving party has the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the movant has made this showing, the burden shifts to the nonmoving party to identify specific evidence showing that a material factual issue remains for trial. *Id.* The nonmoving party may not rest on mere allegations or denials from its pleadings, but must "cit[e] to particular parts of materials in the

3

record" demonstrating the presence of a material factual dispute. Fed. R. Civ. P. 56(c)(1)(A); *see also Anderson*, 477 U.S. at 248. The nonmoving party need not show that the issue will be conclusively resolved in its favor. *Id.* at 248-49. All that is required is the identification of sufficient evidence to create a genuine dispute of material fact, thereby "requir[ing] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (internal quotation marks omitted). If the nonmoving party cannot produce such evidence, the movant "is entitled to . . . judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323.

On summary judgment, the court draws all reasonable factual inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise a genuine dispute and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738-39 (9th Cir. 1979).

## DISCUSSION

In their initial motion, plaintiffs stated that they sought "an order finding that there is no genuine dispute" as to the following five issues: (1) "Quest sold lab tests in California at prices that were below cost." (2) "Plaintiffs were injured as a result of Quest's below-cost sales." (3) "Plaintiffs are entitled to the statutory presumption under the UPA that Quest's below-cost sales were made with the purpose of injuring competitors and destroying competition." (4) "Quest violated [the UCL] by engaging in unlawful, unfair, and fraudulent conduct in the limitations period." (5) "Quest's asserted affirmative defenses each fail either as a matter of law or due to lack of evidentiary support." Mot. at 1. In their reply brief, plaintiffs state that they continue to seek summary judgment on these same five issues, albeit only insofar as they apply to their remaining claims. Reply at 3-4. I address each issue below.

### I.  BELOW-COST SALES

Plaintiffs request an order finding as a matter of law that Quest's contracts with Aetna and Partnership Health Plan involved the sale of lab tests at below-cost prices. Mot. at 16-18; Reply at

4

1-2. Plaintiffs acknowledge that such a finding would resolve, at best, only one limited aspect of their remaining claims. Nevertheless, they contend that granting summary judgment on the issue is sensible because, "if the Court determines as a matter of law that Quest priced lab tests at below-cost levels in its contracts with Aetna and [Partnership Health Plan], plaintiffs will not need to argue those points to the jury." *Id.*

I agree with Quest that, even assuming that there is no genuine dispute on this issue, summary judgment is not warranted. Plaintiffs do not specify in their papers what particular tests they want me to determine as a matter of law were priced below cost. They include numerous statements to the effect that Quest underpriced significant portions of the tests involved in the Aetna and Partnership Health Plan contracts. *See, e.g.,* Mot. at 11 ("A careful analysis of the . . . fee schedule indicates that while the Aetna contract appears to have been profitable overall, it includes numerous below-cost prices for individual tests that were also offered by Hunter."); Reply at 1 ("The [Partnership Health Plan] contract has an operating margin of negative $22.20 [per] requisition, which necessarily means that the contract's prices are below Quest's fully-allocated costs."); Regan Rpt. at 8-9 (Dkt. No. 271-27) (stating that "[t]here is . . . evidence . . . of testing prices that Quest offered to Aetna . . . that are below cost" and providing a table with six examples of underpriced tests); Plandowski Decl. ¶ 23 (Dkt. No. 271-22) (citing pages 8 to 9 of the Regan report and stating that "[o]n an overall basis, the Aetna agreement appears profitable, but there [are] numerous individual tests listed in the . . . fee schedule that are [below cost]"); Regan Reply Rpt. at 7-8 (Lambrinos Reply Decl. Ex. 1, Dkt. No. 295-7) ("[My] analysis identified approximately 40 tests, or 35 percent of tests, where the Aetna price was below Quest's fully-allocated cost."). But they fail to specifically identify in their papers the particular subset of tests on which they seek a summary judgment ruling.

At oral argument, plaintiffs attempted to clarify their request by citing to exhibit 1 of the May 19, 2015 expert report of Vincent Thomas, Quest's damages expert. *See* Tr. at 5-6 (Dkt. No. 307). In exhibit 1, Thomas analyzes the cost to price ratio of certain tests included in the Aetna contract and concludes that plaintiffs' damages expert, Greg Regan, erroneously identifies several of those tests as priced below cost. *See* Thomas Rpt. at 5-6, Ex. 1 (Sandrock Decl. Ex. 2, Dkt. No.

5

292-7). Plaintiffs emphasized at oral argument that even under Thomas's analysis, thirty-seven of the tests listed in exhibit 1 appear to have generated negative operating margins. *See id.*

Even assuming that there is no genuine dispute as to whether those thirty-seven tests were underpriced, I am not persuaded that a summary judgment ruling to that effect is appropriate here. Such a ruling would neither dispose of plaintiffs' remaining claims nor materially simplify their resolution. Because the ruling would say nothing about the Partnership Health Plan contract, plaintiffs would still need to present witnesses and evidence at trial demonstrating which of the tests included in that contract, if any, were priced below cost. Moreover, it is not clear that the thirty-seven apparently below-cost tests in exhibit 1 are the only tests from the Aetna contract that plaintiffs intend to show were underpriced. If plaintiffs decide to base their claims on any other alleged below-cost sales in connection with the Aetna contract, they will need to introduce evidence to prove that underpricing. Further, causation, damages, and improper purpose will remain disputed issues in this case. The witnesses and evidence that the parties will offer regarding those issues will likely overlap substantially, if not completely, with the witnesses and evidence necessary to show that the Aetna and Partnership Health Plan contracts involved the sale of below-cost tests.

"The Supreme Court has recognized that, even in the absence of a factual dispute, a district court has the power to 'deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.'" *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 255); *accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001); *see also Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1507 (9th Cir. 1995) (recognizing "the district court's discretion to send a case to trial if the judge has doubt as to the wisdom of terminating the case before trial") (internal quotation marks omitted); *United States v. Certain Real & Pers. Prop. Belonging to Hayes*, 943 F.2d 1292, 1297 (11th Cir. 1991) ("A trial court is permitted, in its discretion, to deny even a well-supported motion for summary judgment, if it believes the case would benefit from a full hearing.").

Here, a summary judgment ruling on the below-cost sales issue, as plaintiffs have presented it, would resolve only a sliver of their remaining claims, one that is closely intertwined

6

with issues that will be presented to the jury regardless of whether the below-cost sales issue is decided as a matter of law. *See California Earthquake Auth. v. Metro. W. Sec., LLC*, No. 10-cv-00291, 2014 WL 3341495, at *5 (E.D. Cal. July 2, 2014) (declining to grant plaintiff's motion for summary judgment on the damages element of two of its four claims where "[t]he factual issues going to . . . damages are closely intertwined with [the] claims and factual issues that remain to be litigated"). For this reason, I agree with Quest that plaintiffs' request for a "[p]iecemeal adjudication of [this] portion of [their] claims without a fully developed record, and without the benefit of the presentation of evidence at trial, may complicate rather than simplify the ultimate resolution of the dispute between the parties." *Id.* at *5 (internal quotation marks omitted); *see also Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, 23 F. Supp. 3d 173, 188-90 (S.D.N.Y. 2014). Even assuming that plaintiffs have carried their burden under Rule 56 on the below-cost sales issue, the better course here is to proceed to a full trial. Plaintiffs' motion for summary judgment on the issue is DENIED.

## II. CAUSATION

Plaintiffs contend that there is no genuine dispute of material fact as to whether they were harmed by the below-cost pricing involved in the Aetna and Partnership Health Plan contracts. Reply at 5-8. They emphasize the general principle that causation in antitrust cases "may be inferred" where the alleged injury "was the type of loss that the claimed violations of the antitrust laws would be likely to cause." *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1051 (9th Cir. 1981) (internal quotation marks omitted); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 125 (1969) ("[T]he injury alleged by [petitioner] was precisely the type of loss that the claimed violations of the antitrust laws would be likely to cause. The trial court was entitled to infer from this circumstantial evidence that the necessary causal relation between [respondent's] conduct and the claimed damage existed."). According to plaintiffs, the evidence of causation in this case is sufficiently strong that it *must* be inferred. They ask that the issue be decided as a matter of law before the case is given to the jury.

Plaintiffs are not entitled to summary judgment on causation. As Quest points out, there are a number of material factual disputes that prevent summary judgment on this issue with

7

respect to each of plaintiffs' remaining claims. These disputes include whether Aetna terminated Hunter from its network as a result of the below-cost pricing involved in its contract with Quest, whether SPA's UPA claim arising from the Partnership Health Plan contract is barred by the applicable statute of limitations, and whether the harms SPA traces to the Partnership Health Plan contract are in fact attributable to Quest's below-cost pricing as opposed to other factors.

More generally, the cases cited by plaintiffs do not support their position that they are entitled to summary judgment on this issue. That causation "may be inferred" based on a certain evidentiary record does not mean that it *must* be inferred when a similar showing is made. Plaintiffs do not cite a single decision granting summary judgment for the complaining party on causation in an antitrust case. Their motion for summary judgment on this issue is DENIED.[4]

### III. STATUTORY PRESUMPTION OF IMPROPER PURPOSE

To commit a UPA violation under California Business & Professions Code sections 17043 and 17044, a defendant "must act with the purpose, i.e., the desire, of injuring competitors or destroying competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 169 (1999). Under California Business & Professions Code section 17071, improper purpose is presumed where there is "proof of one or more acts of selling or giving away any article or product below cost . . . , together with proof of the injurious effect of such acts." Cal. Bus. & Prof. Code § 17071. The presumption may be rebutted by establishing one of the UPA's affirmative defenses, or by showing that the below cost sales "were made in good faith and not for the purpose of injuring competitors or destroying competition." *William Inglis*, 668 F.2d at 1049 (internal quotation marks omitted); *accord Bay Guardian Co. v. New Times Media LLC*, 187 Cal. App. 4th 438, 465 (2010). However, unless the defendant is able to produce "conclusive proof that

---

[4] Plaintiffs state in their reply brief that "this Court has already found that plaintiffs established a causal connection between Quest's conduct and their damages for their claims based on the Aetna and [Partnership Health Plan] contracts." Reply at 2. It is true that I stated in the Prior Order that Hunter and SPA had "established a causal connection" with respect to those claims that was sufficient to trigger the presumption of improper purpose (discussed in more detail below) under California Business & Professions Code section 17071. Prior Order at 36-37. But that statement, made in the context of resolving Quest's motion for summary judgment, was in no way equivalent to a determination that plaintiffs had established as a matter of law the causation element of their claims.

8

negate[s] unlawful purpose as a matter of law," a plaintiff who triggers the presumption is entitled to a corresponding jury instruction at trial. *Bay Guardian*, 187 Cal. App. 4th at 465.

Plaintiffs state that they "are entitled to the statutory presumption under the UPA that Quest's below-cost sales were made with the purpose of injuring competitors and destroying competition." Reply at 4. They emphasize that "Quest may attempt to negate [the] presumption at trial but [has] not done so yet." *Id.*

It is not clear what plaintiffs hope to accomplish by this portion of their motion. In ruling on Quest's motion for summary judgment, I found that plaintiffs had produced sufficient evidence of "the injurious effect" of Quest's alleged below-cost sales to Aetna and Partnership Health Plan to rely on the section 17071 presumption with respect to claims arising from those contracts. Prior Order at 34-38. On this ground, I rejected Quest's argument that plaintiffs had failed to produce sufficient evidence of improper purpose in connection with those claims to withstand summary judgment. *Id.* I also rejected Quest's argument that it had successfully rebutted the presumption. I stated: "Quest may have offered rebuttal evidence, but it did not negate the presumption by conclusive proof." *Id.* at 38 (internal quotation marks and alterations omitted). To the extent that plaintiffs are merely seeking to reaffirm this aspect of the Prior Order, this portion of their motion is redundant and unnecessary.

Plaintiffs may also be seeking an order concluding as a matter of law that Quest cannot rebut the section 17071 presumption, and that they are entitled to a jury instruction on the presumption regardless of what evidence is introduced at trial. To the extent that this is the case, this portion of their motion fails because it is unsupported by the record. In the Prior Order, I recognized that Quest had offered evidence to rebut the presumption but found that the evidence was not enough to "negate the presumption by conclusive proof." Prior Order at 38. I did not determine once and for all that the presumption could not be rebutted. Plaintiffs have not offered any additional evidence or argument that compels a different conclusion now. Their motion for summary judgment on the section 17071 presumption issue is DENIED.

## IV.   UNFAIR COMPETITION LAW

Plaintiffs ask for an order finding that "Quest violated [the UCL] by engaging in unlawful,

9

unfair, and fraudulent conduct in the limitations period." Reply at 4. Plaintiffs offer no explanation or argument in support of this request, and I construe it as a motion for summary judgment on their UCL claims. The motion is DENIED. Plaintiffs' remaining UCL claims are derivative of their UPA claims arising from the below-cost pricing allegedly involved in the Aetna and Partnership Health Plan contracts. *See* Prior Order at 41-42; Dkt. No. 147 at 27-28. As discussed elsewhere in this order, there are material factual disputes underlying those claims that must be resolved at trial.

Moreover, plaintiffs' claims under the UCL's fraudulent prong were previously dismissed with prejudice. Dkt. No. 147 at 27-28. Those claims are no longer part of this case and thus cannot provide the basis for a summary judgment ruling in plaintiffs' favor. Insofar as plaintiffs move for summary judgment on their claims under the fraudulent prong, the motion is DENIED AS MOOT.

## V. AFFIRMATIVE DEFENSES

Quest alleges twelve affirmative defenses in its answer: (1) statute of limitations; (2) waiver; (3) settlement agreement; (4) unclean hands; (5) meeting competition; (6) good faith; (7) conduct of third parties; (8) no competing tests; (9) lack of injury; (10) lack of causation; (11) failure to mitigate damages; and (12) contribution/indemnity. Dkt. No. 153 at 73-75.

Plaintiffs initially sought summary judgment on each of these defenses. Mot. at 19-22. In its opposition brief, Quest withdrew its defenses of waiver, failure to mitigate damages, and contribution/indemnity but opposed plaintiffs' motion for summary judgment on its defenses of statute of limitations, settlement agreement, lack of injury, lack of causation, unclean hands, meeting competition, good faith, and conduct of third parties. Opp. at 7-8. Regarding the defense of "no competing tests," Quest stated, "Plaintiffs appear to admit that they cannot recover any damages based on below-cost prices [for] tests that [they] do not offer." Opp. at 8. Plaintiffs now appear to seek summary judgment on only two of Quest's defenses: (1) meeting competition and (2) unclean hands. Reply at 8-9.

### A. Meeting Competition

Under California Business & Professions Code section 17050(d), the UPA's prohibitions

on below-cost and loss-leader pricing "do not apply to any sale made . . . [i]n an endeavor made in good faith to meet the legal prices of a competitor selling the same article or product, in the same locality or trade area and in the ordinary channels of trade." Cal. Bus. & Prof. Code § 17050(d). Plaintiffs contend that Quest's meeting competition defense fails as a matter of law because Quest has not produced evidence demonstrating that its competitors' prices were "legal." Reply at 8.

This argument is not persuasive. While section 17050(d) does require a defendant to show that its sales were made "[i]n an endeavor made in good faith to meet the legal prices of a competitor," Cal. Bus. & Prof. Code § 17050(d), the statute does not require defendants to "ascertain the 'legal prices' of their competitors before invoking the exception," *People v. Pay Less Drug Store*, 25 Cal.2d 108, 117 (1944). Rather, the requirement

> is merely that the defendants shall have endeavored "in good faith" to meet the legal prices of a competitor. A similar provision was upheld in [*State v. Sears*, 4 Wash.2d 200, 216-17, 103 P.2d 337, 345 (1940)], the court saying "that if a merchant in good faith reduces his prices to meet those of a competitor, who he in good faith believes has a legal price, he will not be violating either the intent or the wording of the act."

*Id.* A number of state courts, in addition to *Pay Less* and *Sears*, have interpreted similar good faith exceptions to illegal pricing statutes in the same way. *See, e.g., B.F. Specialty Co. v. Charles M. Sledd Co.*, 197 W.Va. 463, 467, 475 S.E.2d 555, 559 (1996) (holding that good faith exception for sales made "[i]n an endeavor in good faith to meet the legal prices of a competitor" does not require the defendant to "conduct an examination of its competitor's books and records in order to perform an analysis of the competitor's price to ensure that it was a legal price"); *State by Clark v. Wolkoff*, 250 Minn. 504, 512, 85 N.W.2d 401, 407 (1957) ("If a merchant in good faith sets the price of an article on the basis of a competitor's price, which price he in good faith believes to be a legal one, there is no violation."); *McIntire v. Borofsky*, 95 N.H. 174, 177, 59 A.2d 471, 474 (1948) ("If [the good faith exception] required the retailer to examine his competitor's books to ascertain whether the competition was legal, it would be of doubtful validity. All that is required of the retailer, however, is an endeavor 'in good faith' to meet the legal prices of his competitor.") (internal quotation marks omitted).

Plaintiffs have not argued, much less shown, that there are no triable issues regarding

11

whether Quest set its prices in a good faith endeavor to meet the prices of its competitors, which Quest believed in good faith to be legal. *See Pay Less*, 25 Cal.2d at 117. Quest's meeting competition defense may go forward. Plaintiffs' motion for summary judgment on the issue is DENIED.

### B.     Unclean Hands

Plaintiffs argue that summary judgment on Quest's unclean hands defense is warranted because the defense does not apply to claims under the UPA or UCL. Mot. at 21-22; Reply at 8-9. Quest concedes that the defense is inapplicable to UPA claims but argues, without reference to any authority, that the defense may be applied to UCL claims. Opp. at 7.

I agree with plaintiffs that Quest cannot rely on the unclean hands defense as a complete defense to their claims under the UCL. The California Supreme Court has stated that "equitable defenses may not be asserted to wholly defeat a UCL claim." *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 179 (2000); *accord Salas v. Sierra Chem. Co.*, 59 Cal.4th 407, 432 (2014). Relying in part on *Cortez*, the court in *Ticconi v. Blue Shield of California Life & Health Ins. Co.*, 160 Cal. App. 4th 528 (2008), held that the unclean hands defense was unavailable in a case involving UCL claims based on alleged violations of the California Insurance Code. *Id.* at 543-545. The court observed that "courts have long held that the equitable defense of unclean hands is not a defense to an unfair trade or business practices claim based on violation of a statute." *Id.* at 543. A contrary approach, the court reasoned, would result in "judicially sanction[ing]" acts that are "declared by statute to be void or against public policy." *Id.* at 543-544; *see also Salas*, 59 Cal.4th at 432 (lower court erred in treating unclean hands defense as a "complete defense" to plaintiff's FEHA claims, as "[e]quitable defenses such as unclean hands may not . . . be used to wholly defeat a claim based on a public policy expressed by the legislature in a statute"); *Mendoza v. Ruesga*, 169 Cal. App. 4th 270, 279-83 (2008) (unclean hands defense is inapplicable to claims under California's Immigration Consultants Act because "[h]ere, as in the UCL context, allowance of an unclean hands defense would undermine public policy").

In light of these authorities, and in the absence of any to the contrary, I am persuaded that Quest's unclean hands defense cannot bar plaintiffs' UCL claims. The defense may still "guide

12

1  [my] discretion in fashioning the equitable remedies authorized by [the UCL]." *Cortez*, 23 Cal.4th

2  at 179-81 ("[W]hat would otherwise be equitable defenses may be considered by the court when

3  the court exercises its discretion over which, if any, remedies authorized by [the UCL] should be

4  awarded . . . [C]onsideration of the equities between the parties is necessary to ensure an equitable

5  result."); *see also Ticconi*, 160 Cal. App. 4th at 544-45 ("Of course, the trial court has the

6  discretion to consider equitable defenses such as unclean hands in creating the *remedies* authorized

7  by [the UCL].") (emphasis in original). But it may not "wholly defeat" the UCL cause of action.

8  *Cortez*, 23 Cal.4th at 179. Accordingly, plaintiffs' motion for summary judgment on Quest's

9  unclean hands defense is GRANTED to the extent that it is asserted as a complete defense to

10  plaintiffs' claims under the UPA and UCL. To the extent that the defense is asserted against

11  plaintiffs' remedies under the UCL, however, the motion is DENIED. *See Aguilar v. Zep Inc.*, No.

12  13-cv-00563-WHO, 2014 WL 4245988, at *19 (N.D. Cal. Aug. 27, 2014) (denying UCL

13  plaintiffs' motion for summary judgment against defendant's unclean hands and other equitable

14  defenses to the extent that the defenses were asserted only against plaintiffs' UCL remedies).

## VI. ADMINISTRATIVE MOTIONS TO FILE UNDER SEAL

The parties have filed a number of administrative motions to file under seal.

On April 1, 2015, Plaintiffs moved to file under seal various portions of their motion for summary judgment and associated materials. Dkt. No. 271. The motion is GRANTED with respect to (1) the materials specifically identified in the declaration submitted by Blue Shield, Dkt. No. 274; (2) the materials specifically identified in the declaration submitted by Aetna, Dkt. No. 275; and (3) the materials specifically identified in the declaration submitted by Quest, Dkt. No. 276, except for pages 5 through 7 and page 15, lines 5 through 6 of plaintiffs' motion for summary judgment. The motion is DENIED WITH PREJUDICE with respect to those portions of plaintiffs' motion for summary judgment. The motion is DENIED WITHOUT PREJUDICE with respect to all other materials sought to be sealed in the motion. Plaintiffs have until 7 days from the date of this order to submit an amended declaration in support of sealing.

On May 19, 2015, Quest moved to file under seal: (1) excerpts from the transcript of the deposition of Richard Gentleman; (2) the expert report of Vincent Thomas; (3) excerpts from the

13

transcript of the deposition of Greg Regan; (4) excerpts from the transcript of the deposition of Chris Riedel; and (5) portions of its opposition brief. Dkt. No. 292. The motion is GRANTED with respect to the Gentleman deposition transcript and those portions of the Thomas report and opposition brief specifically identified in the proposed order submitted by Quest, Dkt. No. 292-2. The motion is DENIED WITHOUT PREJUDICE with respect to the Regan deposition transcript, the Riedel deposition transcript, and all portions of the Thomas report and opposition brief not specifically identified in the proposed order. The declaration submitted by plaintiffs in support of sealing these materials relies exclusively on their having been designated as confidential. *See* Dkt. No. 293. That is not a proper basis for sealing. Plaintiffs have until 7 days from the date of this order to submit an amended declaration in support of sealing.

On May 29, 2015, plaintiffs moved to file under seal: (1) the reply expert report of Greg Regan; (2) excerpts from the transcript of the deposition of Richard Gentleman; (3) excerpts from the deposition of Greg Regan; and (4) portions of their reply brief. Dkt. No. 295. The motion is GRANTED with respect to those portions of the Regan reply report specifically identified in the declaration submitted by Quest, Dkt. No. 301, the Gentleman deposition transcript, and those portions of the reply brief specifically identified in the declarations submitted by Aetna and Quest, Dkt. Nos. 300, 301. The motion is DENIED WITH PREJUDICE with respect to all other portions of the Regan reply report, all other portions of the reply brief, and the Regan deposition transcript. No party submitted any declaration in support of sealing those materials. Plaintiffs shall file properly redacted versions of these documents within 7 days of the date of this order.

Finally, in the Prior Order, I denied without prejudice Quest's administrative motion to file under seal, on plaintiffs' behalf, certain portions of its motion for summary judgment and associated materials. Prior Order at 42-43. In response to that order, plaintiffs submitted an amended declaration seeking to justify the sealing of Exhibit 5 to the Declaration of Ryan Sandrock in Support of Quest's Motion for Summary Judgment. Dkt. No. 287. That exhibit may

14

remain sealed.[5]

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is GRANTED IN PART and DENIED IN PART. The parties' administrative motions to file under seal are decided as stated above. This order disposes of Dkt. Nos. 271, 272, 292, 295, and 302.

**IT IS SO ORDERED**.

Dated: June 19, 2015



WILLIAM H. ORRICK
United States District Judge

---

[5] On June 8, 2015, Quest submitted a Request for Additional Subject to be Addressed at the June 10, 2015 Hearing and asked that certain portions of the request be filed under seal "because they have been designated as 'CONFIDENTIAL' by plaintiffs." Dkt. No. 302. If plaintiffs would like these portions of the request to remain under seal, plaintiffs shall file a declaration justifying sealing within 7 days of the date of this order.