UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RHEUMATOLOGY DIAGNOSTICS LABORATORY, INC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AETNA, INC., et al.,<br><br>Defendants. | Case No. 12-cv-05847-WHO<br><br>**ORDER REGARDING PLAINTIFFS' COMMUNICATIONS WITH FAIR LABORATORY PRACTICES ASSOCIATES**<br><br>Re: Dkt. Nos. 308, 311 |

On June 17, 2015, defendants Quest Diagnostics Incorporated and Quest Diagnostics Clinical Laboratories Incorporated (collectively, "Quest"), submitted a short brief regarding their concerns over plaintiffs' communications with the individual relators in *U.S. ex rel. Fair Lab. Practices Associates v. Quest Diagnostics Inc.*, No. 05-cv-05393-RPP, 2011 WL 1330542, at *1 (S.D.N.Y. Apr. 5, 2011) ("*FLPA*"). *See* Dkt. No. 308 ("Br."). I heard argument on a telephonic hearing today.

*FLPA* was a qui tam action against Quest Diagnostics Incorporated and Unilab Corporation dba Quest Diagnostics[1] brought by a litigation partnership (i.e., FLPA) formed by three former senior Unilab executives for the sole purpose of prosecuting the action. 2011 WL 1330542, at *1. The three former senior Unilab executives were Andrew Baker (Unilab's former CEO), Richard Michaelson (Unilab's former CFO), and Mark Bibi (Unilab's former General Counsel). *Id.* They alleged that from 1996 to 2005 the defendants violated the Federal False Claims Act and the Federal Health Care Anti-Kickback Act by offering medical testing services at a substantial discount in order to obtain highly lucrative referrals of Medicare and Medicaid

---

[1] Unilab became a wholly owned subsidiary of Quest in or around February 2003. *FLPA*, 2011 WL 1330542, at *2.

1   patients. *Id.*[2]

2   Bibi had been Unilab's sole "in-house" lawyer from 1993 to 2000. *Id.* He stood to collect 29 percent of the qui tam recovery. *Id.* at *4. The Hon. Robert P. Patterson, Jr. found that Bibi violated his ethical obligations by improperly disclosing Unilab's confidential communications in the course of litigating the case, and by bringing an action that was materially adverse to Unilab's interests. *Id.* at *6-11. As a remedy, Judge Patterson dismissed FLPA's complaint and disqualified "FLPA, its general partners, and its counsel . . . from this action and any subsequent action arising out of the same facts." *Id.* at *11.

The Second Circuit affirmed on appeal, holding that Judge Patterson "did not err by dismissing the complaint as to all defendants, and disqualifying [FLPA], its individual relators, and its outside counsel on the basis that such measures were necessary to avoid prejudicing defendants in any subsequent litigation on these facts." *United States v. Quest Diagnostics Inc.*, 734 F.3d 154, 158 (2d Cir. 2013).

Plaintiffs' privilege log reflects numerous emails from the summer of 2012 (shortly before this action was filed on November 14, 2012) involving both Chris Riedel (the principal of plaintiff Hunter Laboratories, LLC) and Bibi, as well as a number of emails involving both Riedel and Baker and/or Michaelson. *See* Sandrock Decl. Ex. 1 (Dkt. No. 308-7). In its brief, Quest contended that "the existence of these communications prompts important questions that need to be addressed." Br. at 4. It identified four such questions:

> (1) "What was the purpose of the communications? What information did Bibi, Baker, and Michaelson share with Riedel?"
>
> (2) "What was [Stephen] Berry's role in the communications? Who, if anyone, did he represent?"

---

[2] More specifically, FLPA alleged that "from at least January 1, 1996 through present, defendants violated the [Federal Health Care Anti-Kickback Act] through their operation of an ongoing 'pull through' scheme wherein defendants charged [independent physician associations] and [managed care organizations] below cost rates for the performance of laboratory tests so as (1) to induce the physicians in the [independent physician associations] to refer Medicare and Medicaid-reimbursable tests to the defendants and (2) to induce the [managed care organizations] to arrange or recommend that their in-network physicians send Medicare and Medicaid-reimbursable tests to the defendants." *FLPA*, 2011 WL 1330542, at *2.

       (3) "Do Bibi, Baker, and Michaelson have a stake in the outcome of this case or *Eastman*?"

       (4) "What is Riedel's role in connection with the *Eastman* case? Does he have any stake in that litigation?"

*Id.* at 4. Quest requested an order requiring plaintiffs to produce the communications with the FLPA relators and allowing it take limited discovery from them and Riedel. *Id.* at 1. In the alternative, Quest asked that I review the communications *in camera* "to determine whether there is a valid privilege that would justify withholding production." *Id.* at 5.

       Plaintiffs responded that Bibi left Unilab in 2000, that by the summer of 2012 he was the General Counsel of Manhattan Physicians Laboratories, Inc. ("Manhattan Labs"), and that in this capacity he communicated with Riedel and Berry "about potential antitrust litigation that could be brought against [Quest] for practices that were harming [Hunter], Manhattan Labs, and other regional laboratories." Dkt. No. 310 at 1. Plaintiffs stated that at the time, Berry "was involved with Riedel, Bibi, and others . . . in researching the feasibility of such litigation," but that Riedel ultimately decided to pursue litigation with plaintiffs' current counsel, not Berry. *Id.* Plaintiffs also stated that the communications at issue do not contain any confidential information from Unilab or Quest. *Id.* Nevertheless, they offered to submit the disputed communications for *in camera* review. *Id.* at 2. On June 26, 2015, I ordered them to do so. Dkt. No. 313.

       Having reviewed the documents, the parties' other submissions, and other relevant materials, I find that further discovery or motion practice regarding the communications between Riedel and the FLPA relators is not appropriate in this case. The documents I reviewed do not indicate that Bibi disclosed any confidential information or otherwise violated the terms of Judge Patterson's dismissal order, at least not in any way that is relevant to this case. Nor do the communications indicate that Bibi, Baker, or Michaelson disclosed any confidential information from Unilab or Quest, thereby tainting this action with Bibi's previous ethical violations.

       During the telephonic hearing, Quest argued that Bibi may have violated the "side-switching" rule discussed in Judge Patterson's order (the Second Circuit did not reach that issue). In *FLPA*, Bibi sued Unilab for conduct that allegedly occurred during the same timeframe that he served as its General Counsel. While representing Unilab, he obtained confidential information

directly relevant to the allegations in the complaint and disclosed it to Unilab's adversaries. Here, on the other hand, Bibi works for Manhattan Labs, which is not a party. The lawsuit does not involve a timeframe during Bibi's tenure at Unilab. Concerns about "side-switching" are far more attenuated here than in *FLPA*. I am focused on whether Bibi disclosed confidential information. Unlike in *FLPA*, there is no evidence of such disclosure here. Because twelve years elapsed between Bibi's work at Unilab and his involvement in the instant lawsuit, and without more information, "side-switching" does not appear to be an issue here.

I am satisfied that plaintiffs have properly withheld the bulk of the disputed communications for the reasons stated in their privilege log. *See, e.g., Barton v. U.S. Dist. Court for Cent. Dist. of Cal.*, 410 F.3d 1104, 1111 (9th Cir. 2005) ("Prospective clients' communications with a view to obtaining legal services are plainly covered by the attorney-client privilege under California law, regardless of whether they have retained the lawyer, and regardless of whether they ever retain the lawyer."); *OXY Res. California LLC v. Superior Court*, 115 Cal. App. 4th 874, 891(2004) ("[F]or the common interest doctrine to attach, most courts seem to insist that the two parties have in common an interest in securing legal advice related to the same matter – and that the communications be made to advance their shared interest in securing legal advice on that common matter.") (internal quotation marks omitted). That said, certain of the documents that I reviewed are not privileged and should be produced immediately:

- CTRL00132336-37
- CTRL00128093-96
- CTRL00128089-92
- CTRL00128085-88
- CTRL00128081-84
- CTRL00128076-80

Quest's concerns about the participation of Bibi in this litigation are understandable, and the involvement of attorney Berry in the development of this action and as counsel for the plaintiffs in *Eastman* is unusual, raising issues regarding the nature of Reidel's involvement in that action. But in addition to the lack of evidence of impropriety in this case, Quest's brief on this

4

dispute came only two months before trial, even though it had known of Bibi's involvement from the date the privilege logs were produced. The reasons for the antagonism between Quest, on the one hand, and Reidel and Bibi, on the other, is apparent from this and prior lawsuits. But nothing more needs to be developed prior to the commencement of the trial here.

**IT IS SO ORDERED**.

Dated: July 10, 2015

_____
WILLIAM H. ORRICK
United States District Judge